# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | NO. 08-08 |
| | : | |
| ANTHONY RANDALL | : | |

## MEMORANDUM OPINION

**Savage, J.**                                                              **September 26, 2013**

The defendant, Anthony Randall, has filed a *pro se* motion under 28 U.S.C. § 2255, alleging ineffectiveness of counsel during plea negotiations and post-sentencing. The government seeks dismissal of the motion, invoking the waiver of appellate rights in Randall's plea agreement, which included a waiver of his right to collaterally attack his sentence. Randall counters that his guilty plea was not knowingly and voluntarily made.

Having presided over the defendant's guilty plea colloquy and sentencing hearing, and after carefully reviewing his motion and holding an evidentiary hearing, I conclude that he knowingly and voluntarily waived his right to file a direct appeal, but not his right to collaterally attack his sentence. Therefore, I shall allow Randall to file a § 2255 motion and appoint counsel to represent him.

## Procedural History

Randall was charged in an indictment with six counts of Hobbs Act robbery[1] and two counts of using and carrying a firearm during a crime of violence.[2] He entered a guilty plea to all counts pursuant to a written plea agreement under Fed. R. Crim. P. 11(c)(1)(C), in

---

[1]  18 U.S.C. § 1951(a).

[2]  18 U.S.C. § 924(c)(1).

which he agreed that an appropriate sentence was thirty-two years imprisonment (the statutory mandatory minimum consecutive terms on the two gun counts) followed by a five-year term of supervised release.

The plea agreement contained a waiver of appellate rights. Randall reserved the right to appeal only if the government appealed, his sentence exceeded the statutory maximum, his sentence resulted from an erroneous upward departure from the sentencing guideline range, or his sentence was unreasonably above the applicable guideline range. The waiver included the right to pursue a collateral attack through a motion to vacate, set aside, or modify his conviction and/or sentence under 28 U.S.C. § 2255.

On May 20, 2008, Randall was sentenced to the agreed thirty-two years imprisonment. On April 27, 2009, almost one year after he was sentenced, Randall filed a *pro se* notice of appeal. The Third Circuit dismissed the appeal as untimely. At the same time, it remanded the case to determine whether the notice of appeal should be treated as a motion to vacate his sentence under 28 U.S.C. § 2255.

Converting Randall's notice of appeal to a § 2255 motion, we held an evidentiary hearing. The government contends that Randall, by agreement, waived his right to file a § 2255 motion.

Randall testified that two days after his sentencing, he sent a letter to his counsel inquiring about the status of his appeal. Although the letter did not specifically instruct counsel to file a notice of appeal, its substance reflects that Randall had intended to appeal and believed an appeal had been filed. At least, the letter alerted counsel to her client's desire to take an appeal.

Randall's former attorney testified that she did not receive the letter he claims he

sent her. She stated that if she had received the letter, she would have immediately conferred with her client at the Federal Detention Center ("FDC") and would have advised him that his appellate rights were limited.

Significantly, although she personally did not receive the letter, counsel did not preclude the possibility that her office had received it. The office's normal practice is to place mail in the addressee's mail box and the attorney then puts it into the client's file. She did not see Randall's letter. Nor is it in her client's file. Thus, given counsel's acknowledgment that the letter may have been sent and received by her office, the question comes down to Randall's credibility.

In an affidavit, Randall attested that on May 22, 2008, he had sent the letter inquiring as to the status of his appeal and noting that he had not heard from counsel since his sentencing.[3] He further declared that he wrote follow-up letters to her on October 29 and December 27, 2008. In those two letters, he raised his concerns regarding the second § 924(c) count.

After the evidentiary hearing, we requested the Bureau of Prisons ("BOP") to check its mail logs to determine what legal mail Randall had sent during his confinement there. In response, the BOP advised that the FDC Philadelphia staff was not recording outgoing inmate legal mail during the period of May 20 through July 21, 2008. Consequently, there is no record to confirm or contradict that Randall had sent the May 20, 2008 communication to his counsel.

On the other hand, Federal Correctional Institution, Ray Brook records revealed that

---

[3] Pl.'s Mot. to Vacate, Set Aside, Or Correct Sentence, Ex. B (Doc. No. 40).

Randall sent legal mail to his attorney in Philadelphia on October 30, 2008, and letters to the court and his counsel on April 27, 2009. These entries corroborate his affidavit with respect to those communications. Because those letters referred to the initial letter about his appeal and Randall did not know that the FDC would not have a record of that posting, we find that he did send a written communication to his attorney two days after his sentencing hearing inquiring about an appeal.

### Failure to File Timely Appeal

Randall asserts that his attorney failed: (1) to file an appeal as requested; (2) to investigate a motion to dismiss for lack of jurisdiction; (3) to file a sentencing memorandum; (4) to explain the terms of his guilty plea agreement to him; and, (5) to negotiate the dismissal of one of the 924(c) counts. His claims may or may not have merit. However, if they are covered by the appellate waiver, they must fail.

There is no question that counsel is ineffective when she fails to take an appeal after having been specifically instructed to do so. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). Counsel also has a duty to consult with her client regarding an appeal when counsel has reason to believe either that a rational defendant would want to appeal or the client has reasonably demonstrated to her that he was interested in taking an appeal. *Id.* at 480. Whether there was a trial or a guilty plea is significant in assessing counsel's conduct. *Id.* Where the defendant pleaded guilty, we consider whether the defendant received the sentence he bargained for and whether he reserved or waived his appellate rights. *Id.*

Absent an appellate waiver, no showing of prejudice is necessary because prejudice is presumed. *Id.* at 484. When a defendant is deprived of "an appeal that he otherwise

would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." *Id.*

Departing from the path followed by the majority of the courts of appeals, the Third Circuit Court of Appeals has held that the *Flores-Ortega* presumption of prejudice does not apply where the defendant has waived his appellate and collateral rights as part of a plea agreement. *United States v. Mabry*, 536 F.3d 231, 240-41 (3d Cir. 2008). It has criticized those courts that have held that where the defendant's attorney failed to follow an instruction to file a notice of appeal, an appellate waiver does not bar an appeal. *Mabry*, 536 F.3d at 241-42. It noted that those other courts ignored the existence of the waivers in those cases. *Id.* at 241. It then concluded that entitlement to appeal "disappears" with a waiver. *Id.* at 244. Thus, unless the defendant can show that the waiver was not knowingly and voluntarily made or that enforcing it would result in a miscarriage of justice, the waiver will be upheld.

## Appellate Waiver

Appellate waivers are valid and enforceable if entered knowingly and voluntarily, and enforcing them will not work a miscarriage of justice. *United States v. Goodson*, 544 F.3d 529, 536 (3d Cir. 2008); *United States v. Khattak*, 273 F.3d 557, 558 (3d Cir. 2001). A waiver of appeal includes relinquishing "the opportunity to challenge the sentence imposed, regardless of the merits." *Khattak*, 273 F.3d at 561.

In assessing the validity of the waiver, we consider the language of the waiver and the guilty plea colloquy. *Mabry*, 536 F.3d at 238. To ensure that an appellate waiver is knowing and voluntary, the defendant must be informed of the plea agreement provision waiving the right to appeal and to collaterally attack his sentence. *Id.* at 238-39. The court

must determine that the defendant understands what it is that he is waiving. *Khattak*, 273

F.3d at 560.

The language of Randall's agreement was clear and unambiguous as to his direct

appeal rights. It clearly expressed the limited circumstances, none of which are present

here, where a direct appeal could be taken.

The waiver provision relating to a collateral attack, on the other hand, is not so clear.

It provides:

> In exchange for the undertakings made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law. This waiver is not intended to bar the assertion of constitutional claims that the relevant case law holds cannot be waived.

> Guilty Plea Agreement ¶ 10 (Doc. No. 23).

In his motion, Randall contends that he did not fully comprehend the meaning and

consequences of pleading guilty generally and of waiving his appellate rights specifically.

He argues that his counsel never explained to him the consequences of entering a plea

under Fed. R. Crim. P. 11(c).

Where the defendant claims that the waiver itself was the result of counsel's

ineffectiveness, the appellate waiver will not preclude the filing of a motion under 28 U.S.C.

§ 2255. *United States v. White*, 307 F.3d 336, 337 (5th Cir. 2002) ("[I]neffective assistance

of counsel claims only survive a waiver of appeal if they directly relate to the voluntariness

of the waiver . . . ."); *United States v. Craig*, 985 F.2d 175, 178 (4th Cir.1993) (permitting a

petitioner's claim to continue where the motion to withdraw a guilty plea "incorporate[d] a

claim that the waiver of appeal as well as the guilty plea itself was tainted by his counsel's ineffectiveness"); *United States v. Cockerham*, 237 F.3d 1179, 1181-82 (10th Cir. 2001) (finding that ineffective representation claims survive waiver only where they directly challenge the validity of the plea). Randall's claim may fall into this exception. He has asserted that his counsel was ineffective when she failed to explain the terms of the guilty plea agreement to him. This contention cannot be tested without a hearing.

Although Randall appeared to understand the plea agreement generally, I cannot conclude that he knew and fully understood that he was giving up the right to file a § 2255 motion. Although Randall was given the common advice about giving up his right to file a § 2255 motion, it is doubtful that he could have understood it. The warning is unclear and almost incomprehensible to anyone other than those familiar with federal criminal practice.

Randall was advised at his change of plea hearing regarding a § 2255 waiver as follows:

> Q. Ordinarily, you would have a right to appeal your sentence to a higher court which could modify or set aside the sentence or order me to resentence you.
> And the government also has a right to appeal from the sentence. You also have a right ordinarily to have – not to have, to use a petition for a writ of habeas corpus that would challenge the proceedings and ask me to vacate, set aside, or correct the sentence.
> This plea agreement you've entered into with the government severely limits your right to appeal, and it prevents you from filing a petition for a writ of habeas corpus, which would challenge the conviction, sentence or any other matter in connection with this proceeding. Do you understand that?
>
> A. Yes, I understand.

Change of Plea Hr'g Tr. 17:10-25, Feb. 20, 2008.

It is not possible to conclude that he comprehended what he was giving up by

agreeing to the waiver as it related to a § 2255 motion.  He was a twenty-two-year-old high school dropout, having a tenth grade education.

Considering the language of the § 2255 waiver in the plea agreement and the advice given at the plea colloquy together with Randall's limited education and immaturity, I conclude that he did not knowingly waive his right to file a motion pursuant to 28 U.S.C. § 2255.  Therefore, Randall will be permitted to file a § 2255 motion with the assistance of appointed counsel.